WILLIAM V. PENOYAR et al., Appellants, *v.* WILLIAM E. KELSEY et al., Respondents.

1. ATTACHMENT — CODE CIV. PROC. § 636 — STRICT CONSTRUCTION. Section 636 of the Code of Civil Procedure, prescribing the grounds for the issuance of a provisional attachment against property, must be construed strictly in favor of those against whom it may be employed.

2. CODE CIV. PROC. § 636 — GROUND OF ATTACHMENT — FALSE STATEMENT IN WRITING FOR THE PURPOSE OF PROCURING CREDIT. The clause of section 636 of the Code of Civil Procedure which provides that an attachment may issue where, for the purpose of procuring credit, or the extension of credit, the defendant has made a false statement in writing as to his financial responsibility or standing, must be construed as confining the remedy to the creditor defrauded, and no one can resort to it except those who gave or extended credit to the debtor, relying upon his statement as true. Hence, an alleged false statement in writing by a debtor, which does not come to the knowledge or notice of a creditor until after credit has been given to the debtor, is not sufficient to authorize the granting of a warrant of attachment under such provision.

*Penoyar* v. *Kelsey*, 3 App. Div. 618, affirmed.

(Argued June 9, 1896; decided October 6, 1896.)

APPEAL from order of the Appellate Division of the Supreme Court in the fourth judicial department, made March 14, 1896, which affirmed an order of Special Term vacating an attachment issued against the property of the defendants.

The appeal was allowed and a question certified for determination by an order of the Appellate Division in the following form, viz. : " That an appeal to the Court of Appeals may be taken from the order and determination of this court heretofore and on the 14th day of March, 1896, made in this action, affirming an order heretofore and on the 26th day of December, 1895, vacating a warrant of attachment heretofore made in this action, and this Appellate Division hereby allows the same.

" And it is hereby certified that a question has arisen under section 636 of the Code of Civil Procedure which provides that an attachment may issue, viz. : ' Where, for the purpose of procuring credit, or the extension of credit, the defendant

has made a false statement in writing, under his own hand or signature, or under the hand and signature of a duly authorized agent, made with his knowledge and acquiescence, as to his financial responsibility or standing,' whether an alleged false statement in writing by a debtor, which does not come to the knowledge or notice of a creditor until after credit has been given to the debtor, is sufficient to authorize the granting of a warrant of attachment under such provision."

*Stillman F. Kneeland* for appellants. In this state the plaintiff in attachment is never required to go beyond the terms of the statute. (*Treadwell* v. *Lawlor*, 15 How. Pr. 8; *Camman* v. *Tompkins*, 12 Barb. 265.) The language of the act of 1894 being plain and unambiguous, the courts must ascertain by its terms the intention of the lawgivers. They have no power to add to its terms or change its tenor. (*People ex rel.* v. *Wemple*, 115 N. Y. 302; *Newell* v. *People*, 7 N. Y. 97; *Gibbon* v. *Ogden*, 9 Wheat. 188; *People* v. *Purdy*, 2 Hill, 31; 4 Hill, 384.)

*Norman D. Fish* for respondents. The affidavits upon which the warrant of attachment was granted are fatally defective inasmuch as it nowhere appears therefrom, either that the plaintiffs relied upon the false representations of the defendants, or that such representations were made to the plaintiffs or that they ever came to their knowledge, or influenced them in the sale of the property in question in this action, or that they were made for the purpose of obtaining credit from the plaintiffs, or that the plaintiffs gave any credit on account thereof, or were in any way injured thereby. (Code Civ. Proc. § 636; Kneeland on Attach. § 3; *Rowles* v. *Hoare*, 61 Barb. 271; *In re Denny*, 2 Hill, 220; 1 Kent's Comm. 368, 464; *Bertles* v. *Nunan*, 92 N. Y. 157; Potter's Dwarris on Statutes, 185; *Linderman* v. *Farquharson*, 101 N. Y. 434; *Fitzgerald* v. *Quann*, 109 N. Y. 445; Smith on Statutes, §§ 701–703; *White* v. *Wager*, 32 Barb. 250; *Smith* v. *People*, 47 N. Y. 336; *Holy Trinity Church* v. *U. S.*, 143 U. S. 457; *People* v. *U. Ins. Co.*, 15 Johns. 380; *Hayden* v.

*Pierce,* 144 N. Y. 516; *Vail* v. *B. R. R. Co.,* 147 N. Y. 377; *C. F. A. T. Co.* v. *Bd. F. Comrs.,* 55 Barb. 292.)

VANN, J. The question certified to us for determination depends upon the construction of section 636 of the Code of Civil Procedure, which prescribes "what must be shown to procure" a warrant of attachment against property. The learned counsel for the respective parties differ as to the rule of construction that should be applied, the one contending that it should be strict, because the provision is in derogation of the common law, while the other insists that it should be liberal, because the statute does not derogate from the common law, but merely amplifies a well-known common-law remedy. The process of attachment, as it existed under the common law, differed in its nature and object from the provisional remedy now known by that name. Its original purpose was to acquire jurisdiction of the defendant by compelling him to appear in court through the seizure of his property, which he forfeited if he did not appear, or furnish sureties for his appearance. (3 Blackstone's Com. 280; 1 Rolle's Abrid. Customs of London, K, 13; Kneeland on Attachment, 6; Drake on Attachment, § 5; Ashley on Attachment, 11; Locke on Foreign Attachment, 12.) It was part of the service of process in a civil action through a species of distress, in which the goods attached were the ancient *vadii* or pledges. (*Bond* v. *Ward,* 7 Mass. 123, 128; Gilb. Law of Distress, 24.) As said in the case last cited, "the practice of attaching the effects of a defendant and holding them to satisfy a judgment, which the plaintiff may recover, when, perhaps, judgment may be for the defendant, is unknown to the common law, and is founded on our statute law." Its present purpose is not to compel appearance by the debtor, but to secure the debt or claim of the creditor. It is a proceeding *in rem* and the process may issue, in certain cases, whether the defendant has been served with a summons or not, although inability to serve, through the fault of the defendant, is a ground upon which the warrant may be granted. It exists, as a provisional

remedy, only when authorized by statute, and, as such, is comparatively recent in its origin. While attachments were permitted in Justices' Courts by the Revised Statutes and were extended somewhat by the Non-imprisonment Act, they were proceedings in the nature of original process, by which the action was commenced. (2 R. S. 274; L. 1831, ch. 300; Bradner on Attachment, 2. See, also, 1 Webster & Skinner, 236; 2 R. L. 1813, p. 157.) Attachment as a provisional remedy, with the object of securing a debt by preliminary levy upon property to conserve it for eventual execution, was created by the Code of Procedure, and has been continued and extended by the Code of Civil Procedure. (Code Proc. § 227; Co. Civ. Pro. § 635.)

Unlike the attachment against absent or absconding debtors under the Revised Statutes or the Stilwell Act, which sequestered the property of the debtor for the benefit of all the creditors alike, this proceeding is for the benefit of the attaching creditor alone. It is not only created by statute, but has substantially none of the features peculiar to the common-law remedy. As said by a recent writer, "it amounts to the involuntary dispossession of the owner prior to any adjudication to determine the rights of the parties. It violates every principle of proprietary right held sacred by the common law. It is, to some extent, equivalent to execution in advance of trial and judgment. Property is taken, under legal process, at the instance of one without even a claim of title from the possession of another whose title is unquestioned; and though the mere taking does not work any change in the ownership of the property, it seriously affects some of the most important incidents of that ownership, and may even be the means of thwarting the owner in his endeavors to meet the just demands against him." (Wade on Attachment, § 2.)

Owing to the statutory origin and harsh nature of this remedy the section in question should be construed, in accordance with the general rule applicable to statutes in derogation of the common law, strictly in favor of those against whom it may be employed. (Id.; *Sharp* v. *Speir*, 4 Hill, 76, 86;

Waples on Attachment, § 23.) Non-residence, departure from the state, or concealment therein, with intent to defraud or to avoid the service of process, were at first the only grounds upon which an attachment might issue. (Code Proc. 1849, § 229.) Afterward the statute was so extended as to provide that, in addition to the foregoing grounds, if the defendant "has removed, or is about to remove, property from the state, with intent to defraud his creditors;" or if he "has assigned, disposed of, secreted, or is about to assign, dispose of or secrete property, with the like intent," a warrant might be issued. (Code Civ. Proc. 1891, § 636.) The section continued in this form until 1894, when the clause now in question was added in these words, "or where, for the purpose of procuring credit, or the extension of credit, the defendant has made a false statement in writing, under his own hand or signature, or under the hand or signature of a duly authorized agent, made with his knowledge and acquiescence, as to his financial responsibility or standing." (L. 1894, ch. 736, § 1.)

It will be observed that prior to this amendment the grounds upon which attachments might be issued were not personal to any creditor, but affected all alike. They were of two classes: 1. Those relating to the person of the defendant, such as non-residence, departure from the state, or concealment therein; 2. Those relating to his property and his fraudulent conduct in connection therewith. None of them related to the creation of the debt, and with a single exception all were founded upon acts done with a furtive intent, which injured one creditor the same as another, either by preventing the service of process, or depleting assets in which all were interested. The exception, non-residence, while not wrongful, related to jurisdiction and applied to all creditors with the same force. As all of the grounds were general and impersonal, affecting all of the creditors in the same way, of course, any creditor could take advantage of any ground that existed. By the amendment of 1894, however, a new element was introduced, which the defendants claim is personal to the creditor giving or extending the credit, but which the plain-

tiffs claim is general in its effect and designed to provide immediate security for all creditors whenever the debtor is proved to have been guilty of making written misrepresentations as to his financial standing for the purpose of procuring credit. If the intention was to extend the remedy only to a creditor injured by the fraud, the statute is not a radical departure in legislation, for the practice of fraud, provided it results in lawful damages, is an authorized ground for an order of arrest. If, however, the plaintiffs' contention is correct, an unprecedented rule has been made, which may destroy the credit system and bring confusion to the transaction of business.

While the statute prescribes the purpose of the false statement, it does not in terms prescribe the effect, nor require that the statement should result in procuring credit, yet it would be unreasonable to hold that the legislature intended a statement, which, although false and made with evil motives, was absolutely harmless, should be followed by such grave consequences. It would be an anomaly in commercial law to permit a wrongful act, that injured no one, to disrupt a man's business by allowing any creditor to seize his property at any time. The law furnishes a remedy only for such wrongful acts as result in injury. That is the theory upon which actions are founded and upon which all provisional remedies are allowed, except where the debtor is not amenable to ordinary process and it is necessary to proceed against his property, because there is no jurisdiction of his person. Wrongs not simply designed, but executed, or in process of execution, are those recognized by the law. Abstract wrongs are disregarded, because they do no harm. If a false statement is made for the purpose of procuring credit, but without having that effect, no creditor is injured. If it is made to one who does not believe it, or does not act upon it, why should it become the basis of this summary remedy? If made to a commercial agency and it rests quietly upon the books without coming to the knowledge of any one who relies upon it, no reparation is needed, because no mischief has resulted. No right has been violated, no wrong suffered and no damages

sustained. Although the statute is silent upon the subject, we think that the strict rule of construction that we have adopted requires us to hold that the false statement must be successful in procuring credit from some one in order to authorize an attachment.

But suppose the specified fraud has been successfully practiced upon one creditor, does that allow another to take advantage of it, although it had not come to his notice when he gave or extended credit to the debtor? We think not, for the reasons already given, but mainly because he was not injured. He was neither deceived, nor defrauded by a statement of which he had not heard when his debt was contracted. He gave no credit on the strength of a representation made at some other time to some other person. We think that the remedy, so far as it is based upon the clause under consideration, is confined to the creditor defrauded and that no one can resort to it except those who gave or extended credit to the debtor, relying upon his statement as true. The inconvenience and injustice resulting from any other construction is so manifest as to bear strongly upon the intention of the legislature, for a statute should be so construed, when the language will permit, as to make it practicable, just and reasonably convenient. (*Rosenplaenter* v. *Roessle*, 54 N. Y. 262, 265.) It is unreasonable to suppose that the legislature intended that a single false statement should follow a man through life and expose his property to attack by his creditors, at any time they chose. This would virtually withdraw from his property, for all time, the safeguards which protect the property of all other persons. It would be perpetual outlawry applied to his property and would tend not only to drive him out of business, but to expel him from the state. It would violate every precedent and all analogies and we think that if the legislature intended to impose such a severe penalty for possibly a single false step, it would have said so in plain terms.

We are thus led to answer the question certified in the negative and to affirm the order appealed from, with costs.

All concur.

Order affirmed.