## ROBINSON v. COLUMBIA SPINNING CO.

### In re SNYDER et al.

(Supreme Court, Appellate Division, First Department. June 28, 1898.)

1. WAREHOUSEMAN—WAIVER OF LIEN.

Upon the application of the receiver of a corporation to restrain the sale of certain property, belonging to it, under an attachment previously issued in another action, it appeared that at the time of the alleged levy thereunder the property was in the custody of a warehouseman, who had a lien thereon for his charges. The sheriff did not undertake to execute the process as required in the case of property incapable of manual delivery, and the warehouseman refused to allow him to take it away, or to place a padlock on the door of the building containing it, but offered to

act himself as keeper; and the property was accordingly left where it was.
There was evidence that the sheriff said he would pay the warehouseman's
lien before taking the goods, but an attempt to show that the sheriff
agreed to pay the lien was unsuccessful. *Held*, that the facts constituted
no waiver by the warehouseman of his lien.

2. ATTACHMENT—LEVY.
    The evidence did not establish that the sheriff took the goods into his
    actual custody as required by Code Civ. Proc. § 649, subd. 2.
    Ingraham, J., dissenting.

Appeal from special term, New York county.

Action by Charles L. Robinson against the Columbia Spinning Company. Valentine P. Snyder and others were appointed receivers of such company, and the Merchants' National Bank, in a suit against such company, levied an attachment. From an order enjoining the bank from selling such property, and authorizing the receivers to sell it subject to a judgment in the action, the bank appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

George Zabriskie, for appellant.
Charles E. Hughes, for respondent receivers.
Ward & Cameron, for Lewis V. Thayer.

O'BRIEN, J. On April 15, 1897, the Merchants' National Bank commenced an action, and obtained a warrant of attachment against the property of the Columbia Spinning Company, which on the same day was issued to the sheriff of New York county. On April 21st an alias attachment was granted, directed to the sheriff of any county in the state. On April 22d the sheriff of Albany county claims to have levied on 256 cases of cotton yarns belonging to the spinning company, and stored in the warehouse of Charles F. North, at Cohoes, and to have taken the same into his actual custody. On April 28th receivers were appointed of the Columbia Spinning Company; and subsequently an application was made to the court by the receivers to enjoin the sheriff and the bank from selling the goods, upon the ground that no valid levy had been made by the sheriff under the attachment before the appointment of the receivers, which motion coming on to be heard, a reference was ordered to take proof on the question whether the sheriff of Albany county, prior to the appointment of the receivers, had made a valid levy under the attachment upon the defendant's goods, or upon its interest therein, and to report the evidence taken with his opinion. The referee reported against the validity of the levy under the attachment; and, the motion of the receivers being brought on for further hearing upon his report and the evidence taken by him, an order was entered restraining the bank from selling the property of the defendant in Cohoes, and from in any way interfering with the receivers; and it is from this order that the bank appeals.

The testimony bearing upon the question whether the bank obtained a lien upon the goods at Cohoes prior to the appointment of the receivers is thus correctly summarized by the referee in his report: The sheriff of Albany county on the 22d day of April, 1897, served

Charles F. North, the warehouseman, with a copy of the warrant of attachment, affidavit, and summons; but such papers were not certified by the sheriff in the manner required by subdivision 3 of section 649 of the Code of Civil Procedure in the case of a levy upon personal property other than "personal property capable of manual delivery." At the time of the service of the papers the sheriff went into a warehouse at Cohoes, owned or possessed by said North, and looked over certain cases of goods, and said to North that he attached 256 of such cases, and asked North to be allowed the privilege of putting a keeper thereof in the warehouse, which North refused to do, and also refused to allow the sheriff to put a padlock on the door of the building, but said that he would himself act as keeper. The sheriff thereafter caused an appraisal and inventory of the goods to be made. At the time when the transaction between the sheriff and North took place, the latter had and claimed a lien as warehouseman, and the right of possession, by virtue of said lien, of the 256 cases of goods. The amount of said warehouseman's lien was not at any time paid, nor was the lien discharged, prior to the appointment of the receivers. The sheriff testified that he agreed to pay North $700 before he moved the goods, and, again, that he agreed to pay the $700 that was due; but on cross-examination he qualified this by saying that North told him that he had a lien on the goods, but immediately afterwards he states that he told North he would pay the $700 before he took the goods away, and that he said to him he would not take them away until he paid the $700. Again he repeats that he would pay the claim before he would take away the goods. He said, "I said I would pay all charges." This was on the 21st. He says that he did not tell North on the 21st, which was the date of the first attachment, that he would not move the goods until his storage charges were paid, but that he would pay the charges; but then, immediately after, he says that he said he would not take the goods away until he had paid. The warehouseman's testimony is, in substance, as follows: That the sheriff said he would pay the lien before he took the goods away; that he knew he would have to pay, because he would have made him, or any one else; that he did not discharge the lien at that time, and did not agree to discharge it, and said nothing to the effect that he would give up the lien on the goods. "I knew, if Sheriff Thayer sold those goods, I wanted him to have knowledge of the fact that I had a claim that he must stand surety to me for; and if he said, 'I will pay that claim,' he could have taken the goods out. I would take his word for the payment of it." He states further that he knew his lien followed the goods, and that he still held the goods subject to his lien for charges; that he knew he did not have to give up the goods until they were paid for. And in answer to the direct question, "As a matter of fact, you still held your lien on the goods?" he said, "It existed." Another witness testified that the warehouseman told him that no one could get the goods until the charges were paid.

The sole question on this appeal is whether the evidence supports the conclusion reached by the referee, that the bank did not obtain a lien upon the goods at Cohoes prior to the receivers' appointment on April 28th. This having been a reference, not to hear and de-

termine, but to take testimony and report the same to the court with the referee's opinion, we are free to examine the evidence adduced, and reach an independent judgment upon the facts. As said in Robinson v. Spinning Co., 23 App. Div. 502, 49 N. Y. Supp. 4:

"The right to issue a warrant of attachment, as a provisional remedy, is one that depends upon the statute, and has no existence outside of the statutory provisions. The cases in which it can be granted, as well as the procedure necessary to make it effective, are prescribed by the statute, which must be followed, to make the remedy effective."

See, also, Penoyar v. Kelsey, 150 N. Y. 80, 44 N. E. 788; Hayden v. Bank, 130 N. Y. 146, 29 N. E. 143.

The cases cited are authority, if any were needed, for the proposition that, to support a claim of lien under an attachment, there must be clear proof of a compliance with the statute, and that the burden of presenting such proof is with the one asserting the lien. Whether this burden of showing that a valid lien was acquired has been sustained by the bank, depends upon whether the proof clearly supports the inference that when the sheriff went to the warehouse he took the goods in question into his "actual custody," within the meaning of subdivision 2, § 649, of the Code. It is not disputed that the sheriff did not undertake to execute the process "by leaving a certified copy of the warrant and a notice showing the property attached," which is the manner in which, pursuant to the third subdivision of section 649, property incapable of manual delivery may be attached. For the purpose of establishing the lien, therefore, it was necessary for the bank to show that the sheriff took this property into his actual possession or custody. Such actual possession or custody does not necessarily imply an actual touching or removal of the goods, but it does imply such a cause of action as in effect reduces them to the absolute control of the person who claims to have taken such custody. Whether the sheriff reduced the property to the dominion of the law by taking actual possession thereof, depends upon the inferences to be drawn from what occurred between the sheriff and the warehouseman when the former, on April 22d, went to the warehouse at Cohoes, where the goods were stored. The sheriff had been at the warehouse the day before, with a prior attachment; but on the 22d day of April, when he came with the bank's attachment, he says he asked what goods of the spinning company were in the warehouse, and that Mr. North took him over to the warehouse, opposite, and showed him the 256 cases of yarn, which the sheriff then said he would attach, and asked to be allowed to put a keeper in; but this was refused upon the ground that there were other goods there, as was likewise the request that he might place a padlock on the doors. The request for a receipt was met by a like refusal of the warehouseman, who said that there was a receipt outstanding, and that he would give no other. The sheriff states that he then asked whether the warehouseman would act as his keeper, agreeing to give him some compensation, and that an arrangement was made to that effect. These, and the other facts stated in the referee's report, tend to support the inference, undoubtedly, that the warehouseman was not averse to the sheriff's taking possession in some or any way, provided, however. that it

was done in subordination to, and did not interfere with, his warehouseman's lien for back charges.

The question therefore turns, not alone upon the intention of the sheriff and warehouseman, but upon whether, as matter of fact, it can be concluded that the warehouseman waived his lien, and thereby placed the property in such a position that it could be actually possessed by the sheriff; for we think it will be conceded, as matter of law, that, having a lien on the property, the warehouseman was entitled to possession, and until either his lien was discharged, or he waived it, such possession could not be wrested from him, even by the sheriff. As long as the warehouseman's lien continued, he had thereunder, as of right, the possession and custody of the goods. While such possession continued, it is difficult to conceive how the sheriff also had possession, unless we conclude that in some way there could be a double possession in custody at the same time by both the sheriff and warehouseman under different liens and different rights. As we understand it, the appellant contends that there was, in effect, a waiver by the warehouseman of his lien, and a turning over to the sheriff of possession of the property, under an arrangement by which the sheriff was to pay the warehouseman's claim. The question of paying this claim was undoubtedly mooted, and the warehouseman stated that he would be willing to accept the promise of the sheriff to pay him; and while there is some justification for the inference that on the 21st of April, which was the day before the present attachment is claimed to have been levied, the sheriff did promise to pay the warehouseman's charges, it will be noted that he does not state that on the 22d he repeated such promise,—the fact being that on that day the sheriff stated that the charges would be paid before he would remove the goods. We fail to see that the effect of any such arrangement was any more than to continue the warehouseman's lien until his charges were paid, which, concededly, was not done until the receivers were appointed. We think, therefore, that the evidence is insufficient to show that the warehouseman intended to, or did, as a matter of fact, waive his lien. He kept insisting that before the goods should be taken away he was entitled to receive his pay, and that he intended to stand on his rights in that regard. He states that he would have been willing to accept the promise of the sheriff to pay; but it does not appear that he ever received any absolute or unconditional promise from the sheriff to pay, and it is conceded that as a matter of fact the sheriff never did pay up to the time of the appointment of the receivers. This falls far short of the clear proof required that the sheriff took the goods into his actual custody, within the meaning of subdivision 2 § 649, of the Code. What is required by this section is actual, not constructive, custody; and this necessarily involves such custody as will give complete and physical control of the property. The bank's claim of a valid levy, and a lien thereunder, rests exclusively upon this conversation between the sheriff and the warehouseman, and the burden is on the bank to show that such conversation operated to make the warehouseman's custody the actual custody of the sheriff; for without it the bank obtained no lien prior to the receivers' appoint-

ment.   While there is some testimony favorable to the inference
that the warehouseman was disposed to enter into any arrangement
that the sheriff desired, this fell far short of showing that he waived
his lien.   On the contrary, we think that the conclusion fairly deduci-
ble from the evidence is that the warehouseman was averse to sur-
rendering the control or custody of the goods until his charges had
been paid; thus standing upon, and not waiving, his lien.   Such lien,
therefore, never having been waived or discharged, the actual custody
and possession remained in the warehouseman; and the failure of
the bank to support by satisfactory evidence the contention that an
actual waiver of such lien took place, we think, justified the conclu-
sion reached by the referee in his report, and for that reason the order
appealed from should be affirmed, with costs.   All concur, except
INGRAHAM, J., dissenting.