ASHLAND OIL, INC., Plaintiff,

v.

Ted William GLEAVE, 747 Kenmore Inc. and Joseph A. Mathews, Defendants.

No. CIV-82-352E.

United States District Court, W. D. New York.

June 2, 1982.

Andrew Feldman, Buffalo, N. Y., for plaintiff.

Edgar C. NeMoyer, Buffalo, N. Y., for Matthews.

David R. Knoll, Buffalo, N. Y., for Gleave & 747 Kenmore.

## MEMORANDUM and ORDER

ELFVIN, District Judge.

Plaintiff Ashland Oil, Inc. ("Ashland") has moved in this action to recover damages resulting from alleged violations of 28 U.S.C. § 1962 for a preliminary injunction restraining defendants Gleave, 747 Kenmore, Inc. (Gleave's business) and Mathews from disposing of or transferring their tangible assets or property without further order of this court priorly approving such disposition or transfer. Ashland insists that such restraint is necessary to prevent defendants from frustrating any judgment that may eventually be recovered against them in this action, through disposition of assets and secretion of the proceeds. Ashland maintains that such evasive conduct is to be feared and expected from defendants due to the dishonest and fraudulent character of the offenses with which Ashland charges them.

Ashland contends that Gleave and Mathews engaged in a scheme whereby Gleave would enter a refinery owned by Ashland with gasoline tank trucks owned by 747 Kenmore, Inc., at which refinery Mathews worked as a dispatcher for Ashland. It is said that Mathews contrived on certain occasions to work the job of loading gasoline distributors' tank trucks and, on one or more of these occasions tampered with Ashland's loading meters so as to cause them to produce tickets showing individual loadings of about 1500 gallons to Gleave, whereas about 9,000 gallons were actually received by Gleave upon each loading. In this way it is said that Gleave and Mathews stole at least 375,000 gallons of gasoline from Ashland.

At a hearing on Ashland's motion an agent of the Federal Bureau of Investigation who had participated in an investigation of these alleged activities testified that Mathews, when confronted with certain evidence generated by the investigation, confessed to having committed the alleged actions and implicated Gleave. The manager of Ashland's refinery also testified that Mathews had on another occasion admitted his misconduct and expressed regret therefor. Gleave and Mathews were called by Ashland to testify, but each indicated that he had been informed that he is the subject of a current criminal investigation and refused to testify as to his conduct on Fifth Amendment grounds.

Insofar as a demonstration of probability of success on the merits is requisite to a grant of preliminary injunctive relief, plaintiff has established such. However, I have concluded that the relief sought by plaintiff is not available in this action, absent satisfaction of New York's requirements for issuance of an order of attachment. Additionally, plaintiff has not established all the requisites for preliminary injunctive relief even if such were available upon the accepted equitable terms thereof in this action.

■ Rule 64 of the Federal Rules of Civil Procedure provides:

"At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is held, existing at the time the remedy is sought, subject to the following qualifications: (1) any existing statute of the United States governs to the extent to which it is applicable; (2) the action in which any of the foregoing remedies is

used shall be commenced and prosecuted or, if removed from a state court, shall be prosecuted after removal, pursuant to these rules. The remedies thus available include arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated and regardless of whether by state procedure the remedy is ancillary to an action or must be obtained by an independent action."

Under this provision, as under prior federal law, attachment of property for the purpose of securing satisfaction of the judgment to be obtained is subject to the law of the state in which the district court is held. *See Granny Goose Foods, Inc. v. Teamsters,* 415 U.S. 423, 437 n. 19, 94 S.Ct. 1113, 1123 n. 19, 39 L.Ed.2d 435 (1974); *Usdan v. Dunn Paper Company,* 392 F.Supp. 953, 956 (E.D. N.Y.1975); 7 *Moore's Federal Practice,* ¶¶ 64.01, .02. It is plain that attachment is the relief sought by plaintiff notwithstanding its labelling as a preliminary injunction; moreover, were it not simply improperly labelled it would be no less necessary to treat plaintiff's motion as one for attachment because the preliminary injunction would be equivalent to an attachment order and thus subject to state law under rule 64's last sentence.

New York's provisional remedy of attachment is available under the circumstances set forth in New York's Civil Practice Law and Rules ("CPLR") § 6201, which for purposes relevant to this discussion provides for issuance of an order of attachment in an action for a money judgment, when "3. The defendant, with intent to frustrate the enforcement of a judgment that might be rendered in plaintiff's favor, has assigned, disposed of, encumbered or secreted property, or removed it from the state or is about to do any of these acts."[1] Plaintiff has made no showing that acts within the scope of section 6201(3) have been committed or are contemplated by defendants.

The cases are legion that hold that the provisional remedy of attachment is a particularly harsh remedy, and is a creature of statute in derogation of the common law and is thus to be strictly confined to its statutory authorization which is construed against the one seeking the attachment. *E.g., Reading & Bates Corp. v. National Iranian Oil Corp.,* 478 F.Supp. 724 (S.D.N.Y. 1979); *Worldwide Carriers, Ltd. v. Aris Steamship Co.,* 312 F.Supp. 172 (S.D.N.Y. 1970); *Penoyar v. Kelsey,* 150 N.Y. 77, 44 N.E. 788 (1896); *Siegel v. Northern Boulevard & 80th St. Corp.,* 31 A.D.2d 182, 295 N.Y.S.2d 804 (1st Dept. 1968). Thus, where

---

1. Former subdivision 8 of section 6201 permitted attachments where "there is a cause of action to recover damages for the conversion of personal property, or for fraud or deceit." The elimination of this provision in 1977 (1977 N.Y. Laws c. 860, § 1) fatally undermines plaintiff's contention that, inasmuch as this is essentially an action for fraud or conversion, equity will impose a constructive trust or an equitable lien on the proceeds of the alleged misconduct and plaintiff's right to such proceeds may be secured by injunction. "With the exception of actions based on sister state judgments, the nature of an action (*e.g.,* fraud, conversion) is no longer a ground for attachment. Rather, attachment is available only when it is necessary for jurisdiction or when the defendant is disposing of his property with the intent to defraud creditors." McLaughlin, *Practice Commentaries,* 7B McKinney's Consolidated Laws of New York 12 (1980). Or, it must be added, with intent to frustrate an eventual judgment (CPLR § 6201(3)). It is perfectly in line with the many judicial observations that orders of attachment must be granted in strict accordance with the authorizing statute (see discussion in text) that rule 64 provides for their issuance only in accord with state law "existing at the time the remedy is sought." The New York legislature's determination that attachment is not warranted solely because an action is one for fraud or conversion cannot be annulled by judicial fiat.

In view of this conclusion I need not consider whether plaintiff has established the presence of every element required for the imposition of a constructive trust or equitable lien upon the defendants' assets under the highly developed doctrines attendant to those remedies. I will note, however, that the authorities cited by plaintiff (*Knight Newspapers v. Commissioner of Internal Revenue,* 143 F.2d 1007 (6th Cir. 1944); *In re Anjopa Paper & Board Manufacturing Co.,* 269 F.Supp. 241 (S.D.N.Y.1967); *Brown v. New York Life Ins. Co.,* 58 F.Supp. 252 (D.Or.1944)) and other authorities reviewed by me do not suggest that such remedies are usable prior to a final determination on the merits, for the purpose of securing enforcement of an anticipated judgment.

the grounds urged for attachment are those of section 6201(3), the plaintiff must show by affidavit or other written evidence (section 6212(a)) that the requisite fraudulent or bad faith conduct is occurring or about to occur, and courts will not lightly infer such motives from the mere fact that a defendant is transferring or disposing of properties or assets. *See, e.g., Eaton Factors Co. v. Double Eagle Corp.,* 17 A.D.2d 135, 232 N.Y.S.2d 901, 903 (1st Dept. 1962); *Brezenoff v. Vasquez,* 107 Misc.2d 197, 433 N.Y.S.2d 553, 555 (N.Y.C.Civ.Ct.1980). Plaintiff points to no actual or pending transfers or dispositions of assets by either defendant, but merely asks that the danger of such occurring be presumed because of the underhandedness of the actions alleged and to a certain extent proven to have occurred. As the cited authorities and the discussion in note 1, *supra,* make clear, the law of New York will not permit such presumptions to be the basis for the provisional remedy of attachment.

 Plaintiff's lack of right to an attachment order under the law of this state clearly appearing, it remains to consider plaintiff's argument that 18 U.S.C. § 1964(a) provides an independent federal statutory basis for the requested relief, which under rule 64 would control in this case. Paragraphs (a), (b) and (c) of section 1964 provide:

"(a) The district courts of the United States shall have jurisdiction to prevent and restrain violations of section 1962 of this chapter [18 U.S.C. § 1962] by issuing appropriate orders, including, but not limited to: ordering any person to divest himself of any interest, direct or indirect, in any enterprise; imposing reasonable restrictions on the future activities or investments of any person, including, but not limited to, prohibiting any person from engaging in the same type of endeavor as the enterprise engaged in, the activities of which affect interstate or foreign commerce; or ordering dissolution or reorganization of any enterprise, making due provision for the rights of innocent persons.

"(b) The Attorney General may institute proceedings under this section. In any action brought by the United States under this section, the court shall proceed as soon as practicable to the hearing and determination thereof. Pending final determination thereof, the court may at any time enter such restraining orders or prohibitions, or take such other actions, including the acceptance of satisfactory performance bonds, as it shall deem proper.

"(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter [18 U.S.C. § 1962] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."

Plaintiff's argument glosses over the language in paragraph (a) to the effect that a district court has jurisdiction to issue appropriate orders "to *prevent* and *restrain* violations of [18 U.S.C. § 1962]." For defendants to dispose of assets so as to frustrate enforcement of a judgment in this case would not *ipso facto* constitute a violation of section 1962, which is set forth in the margin.[2] Plaintiff argues that, because un-

---

2. "§ 1962. Prohibited activities

"(a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. A purchase of securities on the open market for purposes of investment, and without the intention of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this subsection if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern or [sic] racketeering activity or the collection of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law

der the broader language of paragraph (b) of section 1964, the government would be able to secure the relief plaintiff seeks if the Attorney General had brought this action, plaintiff ought also to have access to such relief. I note that plaintiff cites no case actually issuing an attachment order or its equivalent under the civil remedy provisions of section 1964; rather, the cases cited by plaintiff—*United States v. Bello*, 470 F.Supp. 723 (S.D.Cal.1979), and *United States v. Scalzitti*, 408 F.Supp. 1014 (W.D. Pa.1975)—both involved criminal prosecutions under 18 U.S.C. § 1963, paragraph (b) of which contains language regarding court orders practically identical to that of 18 U.S.C. § 1964(b). However, assuming *arguendo* that the criminal context of those actions affords no relevant distinction from the instant case, the mere fact that the statutory language appears to provide for a broader range of provisional remedies in actions brought by the government than in those brought by private litigants affords no reason for (and, in fact, argues against) reading such greater breadth into the provision relating to private actions. Nor is the legislative history of section 1964 cited by plaintiff susceptible to the expansive reading that plaintiff urges.

"Subsection (a) contains broad provisions to allow for reform of corrupted organizations. Although certain remedies are set out, the list is not meant to be exhaustive, and the only limit on remedies is that they accomplish the aim set out of removing the corrupting influence and make due provision for the rights of innocent persons." H.Rep.No.1549, 91st Cong., 2d Sess., reprinted in [1970] U.S. Code Cong. & Ad.News 4007, 4034.

This passage merely emphasizes that the orders contemplated by 18 U.S.C. § 1964(a) are for restraining and preventing violations of section 1962, not to secure the execution of judgments. The concern expressed for the rights of innocent persons cannot be stretched to include contemplation of orders in the nature of attachments. Rather, the concern expressed for the rights of innocent persons was evidently directed towards those individuals who become involved in business plans with "racketeers" without suspecting the unlawful sources of funds provided by them. *See United States v. Bello, supra,* at 725; *United States v. Mandel,* 408 F.Supp. 679, 683 (D.Md.1976). Comparison of the succeeding sentences in the House report with that quoted above proves instructive:

"Subsection (b) allows courts to require performance bonds and to enter restraining orders to prevent frustration of the aims of the chapter. See proposed section 1963(b) above. Actions are to be brought by the Attorney General * * *.

Thus it is obvious that Congress intended the government to have greater leeway than private litigants in securing provisional remedies in section 1964 actions.

I thus conclude that the principle adhered to by virtually every court that has considered the matter—to wit, that statutory attachment powers provide a harsh remedy which is to be applied sparingly and in strict observance of the authorizing statute—forbids reading authority to order an attachment or the equivalent thereof into cases brought by private parties under 18 U.S.C. § 1964.

As noted above, even if plaintiff's motion for a preliminary injunction were able to be considered apart from its true nature as an

or in fact, the power to elect one or more directors of the issuer.
"(b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
"(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
"(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section."

attachment request with all that such implies, it would be necessary to deny the motion. While plaintiff has shown a probability of success on the merits of this case, plaintiff has failed to establish a likelihood of irreparable harm, as required for issuance of a preliminary injunction. *Caulfield v. Board of Education*, 583 F.2d 605, 610 (2d Cir. 1978). It is questionable whether the sort of harm plaintiff points to—frustration of enforcement of a money judgment—can ever constitute irreparable harm for purposes of preliminary injunctive relief, absent specific statutory authorization therefor such as provided in 18 U.S.C. §§ 1963(b) and 1964(b) for suits by the government. Plaintiff cites several cases for the proposition that "the potential inability of a party to recoup what rightfully belongs to it is grounds for a finding of irreparable harm." *Treasure Salvors v. Unidentified Wrecked, Etc.*, 640 F.2d 560 (5th Cir. 1981); *Productos Carnic, S. A. v. Cent. Am. Beef, Etc.*, 621 F.2d 683 (5th Cir. 1980); *Philipp Bros., Etc. v. El Salto, S. A.*, 487 F.Supp. 91 (S.D.N.Y.1980); *Stromberg-Carlson Corp. v. Bank Melli Iran*, 467 F.Supp. 530 (S.D.N.Y.1979); *Iowa Ctr. Assoc. v. Watson*, 456 F.Supp. 1108 (N.D.Ill. 1978); *Amoco Oil Company v. Zarb*, 402 F.Supp. 1001 (D.D.C.1975). Review of these cases shows that, even in those most comparable to the instant case, there exists the element that the threatened disposition of assets would itself constitute the primary illegality involved, against the occurrence of which the suit was directed. In the instant case the primary illegality involved has ceased and plaintiff seeks only to recover damages for the injury therefrom to itself. Others of the cited cases involved other recognized factors that support a finding of irreparable harm, such as that a multiplicity of suits would be required to enforce plaintiff's rights or the amount of monetary damages suffered by plaintiff would be speculative. Moreover, each of the cases referred to as most favorable to plaintiff's position, *Productos Carnic, S. A. v. Cent. Am. Beef, Etc.*, *Stromberg-Carlson Corp. v. Bank Melli Iran*, and *Amoco Oil Company v. Zarb*, involved the extraordinary circumstance that if the anticipated disposition of assets were to occur plaintiff would likely be left without any remedy at all due either to the sovereign immunity doctrine or to conditions of political upheaval occurring abroad. These cases to some extent exemplify the maxim that hard cases make bad law, and should not be used to justify disturbance of customary practices regarding the respective roles of the preliminary injunction and of attachment and other statutory remedies aimed at securing enforcement of anticipated judgments.

Finally, I note that plaintiff's request for preliminary injunctive relief is deficient in at least two further respects. Gleave, apparently the more fiscally responsible of the two alleged individual wrongdoers, has submitted an affidavit attesting to his holding of very substantial interests in property and businesses located within this jurisdiction and to the absence of any suspicion-supporting efforts by himself to dispose of or transfer such assets. Plaintiff has failed to dispute this showing or to show financial irresponsibility by either defendant, undermining plaintiff's claim that any damages which plaintiff may suffer before the case can be tried on the merits will be irreparable. *See Margolis v. Franks*, 138 F.Supp. 9, 11 (S.D.N.Y.1956).

Further, it is established in this circuit that equity will not enjoin one from doing what he or she is not shown to be doing or about to do. *Cortright v. Resor*, 447 F.2d 245 (2d Cir. 1971). This rule, which doubtlessly involves considerations that underlie New York's requirement that bad faith or fraudulent transfers or intention to transfer be affirmatively shown before an attachment will issue under CPLR § 6201(3), has been employed to defeat the government's request for an injunction in the nature of an attachment under 18 U.S.C. § 1963(b). *United States v. Mandel, supra*, at 683. The court in *United States v. Bello, supra*, at 725, approved this basis for denying to the government the same relief plaintiff seeks here. Plaintiff has not affirmatively shown that either defendant is

doing or about to do that which plaintiff fears.

In accordance with the foregoing, plaintiff's motion for preliminary relief is hereby ORDERED denied.[3]

3. The within ruling renders moot the quantum and kinds of assets possessed by Gleave which *was to be the subject of an evidentiary hearing* June 2, 1982. Such hearing will not be had.