Edwin B. **MISHKIN**, as Securities Investor Protection Corporation Trustee of Parr Securities Corp. and Mitchell A. Lowenthal, as Temporary Receiver of Parr Investor Services, Corp., Plaintiffs,

v.

**KENNEY & BRANISEL, INC.**; William J. Kenney; Raymond J. Branisel; and John J. Regan, Jr., Defendants.

No. 85 Civ. 3791 (EW).

United States District Court, S.D. New York.

June 5, 1985.

Cleary, Gottlieb, Steen & Hamilton, New York City, for plaintiffs; Thomas J. Moloney, Edwin B. Mishkin, Joanne Zack, Mitchell A. Lowenthal, New York City, of counsel.

Cadwalader, Wickersham & Taft, New York City, for defendants Kenney & Branisel; Earl H. Nemser, Howard R. Hawkins, Barry J. Dichter, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

By order dated May 6, 1985, this Court appointed a temporary receiver of Parr Securities Corp. and later its affiliate Parr Investor Services, Inc. (collectively "Parr").[1] By further order dated May 17, 1985, the Court granted an application of the Securities Investor Protection Corporation for appointment of a permanent trustee to liquidate Parr Securities Corp. and, accordingly, referred the liquidation proceeding to the Bankruptcy Court.[2] Estimating that the liabilities of Parr exceed $16 million while its combined assets total only $1 million, the temporary receiver and the permanent trustee (collectively "the Trustees") thereafter commenced this action against the defendants Kenney & Branisel, Inc. ("K & B"), Parr's former parent, and William J. Kenney, Raymond J. Branisel, and John J. Regan, Jr., K & B's principal directors and officers.

Under twelve causes of action set forth in the complaint, the Trustees essentially seek to void various transfers of funds from Parr to defendants allegedly effected through manipulative and fraudulent practices by defendants in concert with one Gregory Herbert, a principal of Parr, and which funds were diverted to the defendants' accounts. Plaintiffs also seek to enjoin the further disposition of assets of K & B through the defendants alleged continuing fraudulent conduct in "winding down" K & B's business and liquidating its trading positions. Plaintiffs assert that the transfers already made to defendants and those about to be made by defendants to their favored creditors are in derogation of the rights of the Parr creditors represented by the Trustees.

The fraudulent conduct attributed to the defendants and Herbert centered about repurchase transactions, known as "repos," as to which the underlying securities either were not segregated for the benefit of customers or did not exist. Herbert, prior to the commencement of this action, disclosed his fraudulent conduct in the affairs of Parr to the Securities and Exchange Commission ("SEC") and entered into a consent judgment against continuing such illegal activities.[3]

The total amount the Trustees seek to recover from all defendants for the benefit of the Parr creditors exceeds $16 million. However, K & B's net asset position is inadequate not only to meet its acknowledged creditors' claims but to meet those of the Trustees.

The Trustees assert various claims under three federal statutes: the Bankruptcy Code, the Securities and Exchange Act of 1934, and the Racketeer Influenced and Corrupt Organizations Act. The claims under the Bankruptcy Code, 11 U.S.C. §§ 544, 547, and 548, and the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a),

---

1. *Securities & Exchange Comm'n v. Parr Securities Corp.*, No. 85 Civ. 3451, Consent Judgment (S.D.N.Y. May 6, 1985).

2. *Parr Securities*, No. 85 Civ. 3451, Consent Order (S.D.N.Y. May 17, 1985); 15 U.S.C. § 78eee(b)(3), (b)(4).

3. *Parr Securities*, No. 85 Civ. 3451, Consent Judgment (S.D.N.Y. May 6, 1985).

are sufficient to establish subject matter jurisdiction.[4]

Simultaneously with the commencement of this action, the Trustees applied, pursuant to Fed.R.Civ.P. 64 and Article 62 of the New York Civil Practice Law and Rules ("CPLR"), for an order of attachment as to such property held by or for the benefit of defendants that would satisfy plaintiffs' demand for judgment up to some $8.6 million. This part of plaintiffs' application focuses on recovery of certain voidable preferences and fraudulent transfers from Parr to defendants allegedly reflected on Parr's books and records and confirmed by other sources. In addition, pursuant to Fed.R. Civ.P. 65 and section 279 of the New York Debtor and Creditor Law ("DCL"), the Trustees have applied for a preliminary injunction restraining defendants from making any fraudulent conveyances or transfers of property held by them or for their benefit. The Trustees contend that provisional relief is necessary to preserve the status quo because the defendants are likely to continue to dissipate and dispose of their remaining assets, thereby irreparably injuring plaintiffs by frustrating satisfaction of any judgment to which they are ultimately entitled. The corporate defendant, appearing by its attorneys, consented to a temporary restraining order pending the hearing and determination of this motion, and its counsel also were heard in opposition thereto, as were attorneys for two of three creditors of K & B, to whom funds were about to be transferred on account of their respective claims.

The affidavits, pretrial depositions, documents, and results of a time-limited but intensive investigation by the Trustees amply support the charges of fraudulent conduct and transfer of properties to the defendants, acting in concert with Gregory Herbert, the sole principal of Parr, who, as already noted, entered into a consent judgment in an action instituted against him by the SEC. So, too, there can be little doubt that the defendants are currently engaged in efforts to dispose of their assets. Their past fraudulent conduct and their current actions indicate an intent to defeat and defraud the rights of Parr and its creditors and to impede the Trustees in their efforts to enforce any judgment they might obtain. The defendants' course of conduct, if not restrained, threatens to denude K & B of its rapidly diminishing assets. The claims asserted by the Trustees against K & B and those against its principals, the individual defendants, in lesser but still substantial amounts, appear to be meritorious and over and above all counterclaims, if any, as may be asserted by any defendant.[5] It is significant that no defendant, corporate or individual, has negated the serious charges of fraudulent conduct made by the Trustees. In these circumstances, plaintiffs have discharged their burden of showing a probability of success on the merits of their claims. Thus, the continued fraudulent depletion of assets by the defendants and the announcement that, unless restrained, K & B intends to use its remaining and limited assets to pay those of its creditors whom it

---

4. Notwithstanding the Court's order referring the *Parr Securities* liquidation proceeding to the Bankruptcy Court, this Court retains original subject matter jurisdiction under the Bankruptcy Code. *See* 15 U.S.C. § 78eee(b)(2), (b)(4); 28 U.S.C. § 1334; *see also* 28 U.S.C. § 157(d).

5. Immediately prior to the filing of this disposition, defendant K & B filed an amended answer asserting counterclaims against the Trustees in the amount of some $12 million. Whereas plaintiffs' application for an order of attachment arises from some $8.6 million in claims, K & B argues, plaintiffs have failed to satisfy the requirement of CPLR § 6212(a) · that "the amount demanded from defendant exceeds all counterclaims known to the plaintiff." The

Court notes that the total amount of plaintiffs' claims exceeds $16 million (trebled to $48 million under the RICO claim), though the attachment order is limited to a lesser amount; that plaintiffs have not conceded K & B's counterclaims are just, *see Irving Trust Co. v. Gomez,* 550 F.Supp. 773, 774 (S.D.N.Y.1982); *see Shearson Hayden Stone, Inc. v. Scrivener,* 480 F.Supp 256, 259 (S.D.N.Y.1979); and that K & B's amended answer is signed by its counsel, who make the allegations upon which the defendants' counterclaims are asserted. The Court again notes the absence of a single affidavit by any defendant setting forth any evidentiary matter disputing the specific allegations of fraudulent conduct attributed to them.

prefers over others, warrant issuance of an order of attachment in favor of the Trustees under CPLR §§ 6201(3) and 6212(a) and the granting of injunctive relief pursuant to DCL § 279(a).

It is no answer, as was urged upon argument of this motion on behalf of three of defendants' preferred creditors, two national banks and a municipality, that they are innocent of wrongful conduct; that they, too, were good faith participants in repurchase agreements and were victimized by defendants no less than those for whom the Trustees seek recovery; and that they are financially responsible and, upon recovery by the Trustees of any judgment, are subject to suit by the Trustees. This remedy, of course, would entail tremendous delay and require the Trustees to commence three separate actions in three separate jurisdictions, with the needless duplication of time, effort, and expense to the litigants and an unnecessary waste of judicial resources.

*Ashland Oil, Inc. v. Gleave* [6] and other cases cited in opposition to the Trustees' application for relief do not require a different result. Each case upon its facts differs from those presented on this application. The Trustees here have made the requisite showing under New York law entitling them to an order of attachment against the assets and properties of the defendants and have established their right to preliminary injunctive relief pending a trial. They have established that there are "actual or pending transfers or dispositions of assets" by defendants.[7] In fact, to deny the Trustees the requested relief would permit the defendants to dispose of the balance of their meager and inadequate assets by transferring them outside the jurisdiction and thereby frustrate the enforcement of any judgment the Trustees may obtain. In these circumstances the preliminary relief plaintiffs seek is entirely appropriate.[8]

It must be borne in mind that the three preferred creditors of the defendants, the National Bank of North Carolina, the National Bank of Georgia, and DeKalb County, a municipality, are not named as defendants in this action and no charge is made against them. The charge of fraudulent conduct as to the transfers, past as well as contemplated, is made against K & B and its principals, the defendants herein. The fact that the banks and the county are innocent of wrongful conduct does not entitle them to defeat the Trustees' claim against the defendants in this action, whose wrongful conduct against other creditors, whom the Trustees represent, is the subject of this action.[9] The victimized creditors of Parr for whom the Trustees speak were also good faith participants in the repo transactions. The Trustees' having abundantly established, based upon defendants' past conduct, an intent on the part of the latter to defraud and frustrate the enforcement of any judgment in the Trustees' favor warrants the attachment and injunctive relief pending a trial.

The Trustees shall furnish a bond in the sum of $100,000.

Submit proposed order on twenty-four hours' notice.

---

6. 540 F.Supp. 81 (W.D.N.Y.1982).

7. *Id.* at 84.

8. *See In re Feit & Drexler, Inc.*, 760 F.2d 406, 416 (2d Cir.1985).

9. *See* 7A Weinstein, Korn, & Miller, New York Civil Practice, ¶ 6201.12, at 62–35 to 62–36 (1984).