718 F.2d 26
 Fed. Sec. L. Rep. P 99,502
The TRANE COMPANY, Appellant,
v.
O'CONNOR SECURITIES, O'Connor & Associates, Edmund J.
O'Connor, William F. O'Connor, Ann Carmel, Michael D.
Greenbaum, Peter A. Ianello, John F. Kavanewsky, Lawrence
Lambert, Herbert E. Seif, Clayton A. Struve and Arthur A.
Watson, Jr., Appellees.
 No. 1519, Docket 83-7336.
 United States Court of Appeals,
Second Circuit.
 Argued June 17, 1983.
Decided Sept. 19, 1983.
As Modified Oct. 14, 1983.
 
 Edmund H. Kerr, New York City (James C. Blair, Judith A. Ripps, Neil P. Forrest, Cleary, Gottlieb, Steen & Hamilton, New York City, of counsel), for appellant.
 Daniel P. Levitt, New York City (Greg A. Danilow, Scott D. Heller, Kramer, Levin, Nessen, Kamin & Frankel, New York City, of counsel), for appellees.
 Before OAKES and CARDAMONE, Circuit Judges, and BARTELS, District Judge.*
 OAKES, Circuit Judge:
 
 
 1
 Appeal is by The Trane Company, a publicly held stock-exchange-listed concern, from the denial of a preliminary injunction against two limited partnerships (and certain individual partners) which engaged in so-called "risk arbitrage." Appellee partnerships purchased over eight percent of the stock of Trane between January 16 and June 25, 1982, because they thought The Trane Company might be a good investment opportunity as a potential takeover or merger target. The injunction was sought on the basis that the partnerships had, inter alia, violated the securities laws by filing a false and misleading Schedule 13D under the Securities Exchange Act[1] and sought to prevent the partnerships from making or soliciting tender offers or mergers, acquiring or voting Trane stock, and exerting any influence upon the management or affairs of Trane. In a reported opinion, The Trane Co. v. O'Connor Securities, 561 F.Supp. 301 (S.D.N.Y.1983), Judge Robert L. Carter of the United States District Court for the Southern District of New York held that although certain statements were misleading there was no showing of irreparable harm under the Second Circuit test of Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979), and therefore denied the preliminary injunction.
 
 
 2
 Just prior to the argument of this appeal, which elaborately briefed especially Trane's claim that the partnerships had violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Secs. 1961-1968 (Supp.1983), the partnerships sold all their stock in Trane in a negotiated sale transaction, amended their Schedule 13D accordingly and moved to dismiss this appeal as moot. Even though issues may remain for a trial on the merits, we grant the motion under University of Texas v. Camenisch, 451 U.S. 390, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981).
 
 
 3
 The partnerships' sale of their entire Trane holdings clearly moots any questions regarding the propriety of enjoining them from selling or voting their Trane stock. While it is true that Trane also sought a preliminary injunction against additional purchases of its stock by the partnerships, and that such purchases are still possible, the thrust of this request was to prevent the partnerships from increasing their position in Trane and thereby exerting greater pressure on its management or its affairs. Since the defendants in fact liquidated their entire position, there are no remaining "live" issues on this appeal. Camenisch, 451 U.S. at 390, 101 S.Ct. at 1832.
 
 
 4
 To be sure, when repetition of an alleged wrong is reasonably likely, the issue of mootness may take on a different cast. Particularly in class actions, if the issue is capable of repetition, yet evading review, Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 712-713, 35 L.Ed.2d 147 (1973), the case will not be deemed moot, even though the claim of the named plaintiff has become moot, Sosna v. Iowa, 419 U.S. 393, 397-403, 95 S.Ct. 553, 556-559, 42 L.Ed.2d 532 (1975). But here, while abstractly it is conceivable that the partnerships might again acquire a sufficient holding of Trane stock so as to require the filing of a subsequent Schedule 13D under the Securities Exchange Act of 1934, 15 U.S.C. Sec. 78m(d)(1) (five percent threshold acquisition in registered security), there is no reason to suppose that the partnerships would again engage in the conduct which the district court found--we may say not necessarily correctly--constituted misrepresentations.[2]
 
 
 5
 Nor does the fact that the complaint contains allegations pertaining to RICO put the mootness issue in any different light. The use of civil RICO allegations in the securities law field, though of recent vintage, has received quite extensive commentary in the reviews and even a passing favorable glance in a court or two.[3] Trane argues in its affidavit in opposition to the motion to dismiss the appeal that one of the errors made by the district judge was his failure to rule on the question whether O'Connor's violations of section 13D of the Securities Exchange Act of 1934 constituted the requisite predicate acts for the filing of a violation of RICO. The argument is that RICO may be invoked without a showing of irreparable harm and that therefore the RICO injunction claim is not moot even though the Trane shares have been disposed of. Trane also argues that, since it may still have a cause of action to obtain a permanent injunction under RICO, it will therefore be prejudiced unless the issue is addressed here.
 
 
 6
 Preliminarily it should be noted that courts which have confronted the issue have expressed serious doubt concerning the propriety of granting injunctive relief under any circumstances to private parties alleging securities violations under RICO. See Dan River, Inc. v. Icahn, 701 F.2d 278, 290 (4th Cir.1983); cf. Ashland Oil, Inc. v. Gleave, 540 F.Supp. 81, 85 (W.D.N.Y.1982) (private party cannot seek attachment order under RICO Sec. 1964(c)). The only court squarely to have addressed the issue held that such relief may not be granted, Kaushal v. State Bank of India, 556 F.Supp. 576 (N.D.Ill.1983); but cf. Aetna Casualty & Surety Co. v. Liebowitz, No. 81 Civ. 2616 (E.D.N.Y. Dec. 8, 1981) (availability of preliminary injunctive relief not contested); Vietnamese Fishermen's Association v. Knights of Ku Klux Klan, 518 F.Supp. 993, 1014 (S.D.Tex.1981) (availability of preliminary injunctive relief assumed); United States v. Barber, 476 F.Supp. 182, 189 (S.D.W.Va.1979) (dictum that private parties entitled to Sec. 1964(a) equitable remedies under RICO). We have the same doubts as to the propriety of private party injunctive relief, especially in a case of this nature alleging at most, see supra note 2, garden-variety securities law violations as predicates for the RICO violation.
 
 
 7
 In any event we agree with the district courts which have held that to obtain a preliminary injunction under RICO there must be established a likelihood of irreparable harm. Ashland Oil, Inc. v. Gleave, 540 F.Supp. 81, 86 (W.D.N.Y.1982); Marshall Field & Co. v. Icahn, 537 F.Supp. 413, 420 (S.D.N.Y.1982); see Aetna Casualty & Surety Co. v. Liebowitz, No. 81 Civ. 2616 at 3 (E.D.N.Y. Dec. 8, 1981). The only case to hold otherwise was United States v. Cappetto, 502 F.2d 1351, 1358-59 (7th Cir.1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975). But as the district court pointed out, Cappetto was an action brought by the Attorney General, not by a private party.
 
 
 8
 In so holding we, of course, leave to another day the remaining substantive RICO issue, whether the reference in 18 U.S.C. Sec. 1961(1)(D), defining "racketeering activity" to include "any offense involving ... fraud in the sale of securities ... punishable under any law of the United States," which obviously refers to criminal punishment,[4] requires that to be considered as predicates for civil RICO purposes there must have been securities law convictions, particularly in view of the constitutional problems, res judicata problems, and trial problems raised by the different burdens of proof required in the case of a criminal conviction and a civil determination.
 
 
 9
 Dismissed as moot.
 
 
 
 *
 Of the Eastern District of New York, sitting by designation
 
 
 [1]
 Plaintiff alleged that defendants' Schedule 13D, filed pursuant to Sec. 13(d)(1) of the Act, 15 U.S.C. Sec. 78m(d)(1) (1981), and amendments to the 13D filed pursuant to Rule 13d-2, 17 C.F.R. Sec. 240.13d-2 (1982), contained false and misleading statements so as to make the filings violations of Sec. 9(a)(2) (market manipulation to raise or lower price of security), Sec. 10(b) (market manipulation in violation of Commission rules), and Sec. 13(d) (failure to make fair and accurate disclosures) of the Act. 15 U.S.C. Secs. 78i(a)(2), 78j(b), 78m(d) (1981 & Supp.1983). Plaintiff also alleged a violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. Secs. 1961-1968 (Supp.1983) ("RICO"), and sought an injunction based on Sec. 1964(c) of RICO
 
 
 [2]
 The district court found that the partnerships made two false and misleading statements amounting to misrepresentations under the Securities and Exchange Act when they filed their Schedule 13D. The first alleged misrepresentation was the statement that the partnerships "may acquire" more shares of Trane stock, while the district court found that the partnerships were firmly committed to buying more shares. The second statement was that the partnerships were considering making a tender offer for control of Trane. The court found that this statement was misleading because it was unlikely that the partnerships would make such a tender offer
 By ruling that the case is moot, we do not implicitly share the district court's judgment that these statements constitute 13D violations. From the record it is unclear whether these challenged filings were indications of more than caution and flexibility on the part of the partnerships, which had not yet found a way to turn a profit on their Trane shares.
 
 
 [3]
 See, e.g., Schact v. Brown, 711 F.2d 1343 (7th Cir.1983); Hanna Mining Co. v. Norcen Energy Resources Ltd., 1982 Fed.Sec.L.Rep. (CCH) p 98,742, --- F.Supp. ---- (N.D.Ohio 1982); Spencer Companies, Inc. v. Agency Rent-A-Car, Inc., 1981-82 Fed.Sec.L.Rep. (CCH) p 98,361 (D.Mass.1981); Comment, Civil RICO: The Temptation and the Impropriety of Judicial Restraint, 95 Harv.L.Rev. 1101 (1982)
 On the other hand, a growing number of courts have held that private civil RICO actions cannot be used to turn garden-variety securities law violations into racketeering violations under RICO. See Moss v. Morgan Stanley Inc., 553 F.Supp. 1347, 1358-64 (S.D.N.Y.1983), aff'd on other grounds, No. 83-7120 (2d Cir. Sept. 9, 1983) (with discussion of civil RICO at slip op. 6340-46); Noonan v. Granville-Smith, 537 F.Supp. 23, 29 (S.D.N.Y.1981). Cf. Bankers Trust Co. v. Feldesman, 566 F.Supp. 1235 (S.D.N.Y.1983) (bankruptcy fraud); Waterman S.S. Corp. v. Avondale Shipyards, Inc., 527 F.Supp. 256, 260 (E.D.La.1981) (antitrust violation); Adair v. Hunt International Resources Corp., 526 F.Supp. 736, 746-48 (N.D.Ill.1981) (land fraud action); Barr v. WUI/TAS, Inc., 66 F.R.D. 109, 112-13 (S.D.N.Y.1975) (Sherman Act violation).
 
 
 [4]
 Only willful violations of the Securities and Exchange Act are criminally punishable. Section 32(a), 15 U.S.C. Sec. 78ff