FILED

NOT FOR PUBLICATION

MAR 28 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.  SC-13-1206-JuKuPa |
| LIPPUNG AROONSAKOOL and VARATHIP AROONSAKOOL, | Bk. No.  11-06927-LA7 |
| Debtors. | Adv. No. 11-90299-LA |
| LUXURY JEWELS, LLC, | |
| Appellant, | |
| v. | M E M O R A N D U M* |
| GREGORY A. AKERS, | |
| Appellee. | |

Argued and Submitted on March 20, 2014
at Pasadena, California

Filed - March 28, 2014

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Louise de Carl Adler, Bankruptcy Judge, Presiding
_____

Appearances:     Douglas Jaffe, Esq. argued for appellant Luxury
                 Jewels, LLC; William P. Fennel, Esq. argued for
                 appellee Gregory A. Akers, chapter 7 trustee.
                 _____

Before:  JURY, KURTZ, and PAPPAS, Bankruptcy Judges.

---

 * This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

-1-

Chapter 7[1] trustee Gregory A. Akers filed a motion to substantively consolidate the estate of debtors, Lippung and Varathip Aroonsakool, with non-debtor entities Thai Export, LLC (TE) and Luxury Jewels, LLC (LJ). The bankruptcy court found that the requirements for substantive consolidation articulated in Alexander v. Compton (In re Bonham), 229 F.3d 750 (9th Cir. 2000) were met and ordered the substantive consolidation nunc pro tunc to debtors' petition date. LJ appeals from this order. Finding no error, we AFFIRM.

## I. FACTS

**A. Prepetition Facts**

**1. Debtors' Jewelry Business**

For many years, debtors owned and operated a family jewelry business. Debtors' sons, Nimit and Nakon, and their daughter, Tarrah, worked at the business as did Loxunipan Pomsavanh (Lox) and her brother, Tanasin "Bo" Panusith (Bo), who were part of the Aroonsakool household.[2] In February 2007, debtors entered into a seven-year lease at the Grove Plaza Shopping Center (Grove Plaza) in National City, California, where they operated their jewelry business named TE.

In January 2010, Hieu, Inc. filed a complaint against TE alleging breach of contract for debtors' failure to return

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] Both Lox and Bo lived with debtors for many years but were not their biological children.

-2-

jewelry items. In June 2010, Hieu obtained a judgment against TE and proceeded to collect its judgment by placing a keeper at the Grove Plaza store. In October 2010, Lox accepted service on behalf of TE for placement of a keeper. Donald Jaffee, counsel for LJ in this matter, filed a third party claim in the case on behalf of TE and submitted the declaration of Varathip in opposition to the keeper. The declaration, signed under penalty of perjury, stated that the market value of the property at the Grove Plaza store was $1 million and that TE had been denied access to its records. Ultimately, Jaffee represented TE in a settlement between Hieu and TE.

Tax Returns for the year 2010 show that TE had a beginning 2010 inventory value of $677,725 and end of year 2010 inventory value of $650,580. At some point in 2010, TE went out of business.

**2.    LJ Is Formed And Opened For Business**

On January 4, 2011, LJ was formed. Lox is the sole owner and managing member of LJ.

Twenty days prior to debtors' bankruptcy filing, Lox was added as an additional tenant to the Grove Plaza lease based on representations from debtors that she was going to operate the store as her own business. At that time, Lox submitted an application to the landlord containing information about her financial condition. Lox stated that she was a current employee of TE, held the position of manager, and that her salary was $24,000 a year. Lox listed assets valued at $10,000, but at the same time stated that she would spend $250,000 to acquire

inventory for her business.[3]  Later, in a deposition conducted in connection with the substantive consolidation motion at issue in this appeal, Lox explained away these facts by testifying that she made them up.

Lox then proceeded to open LJ for business.  A few days before the landlord received notice of debtors' bankruptcy filing, the TE store sign was removed and a new sign installed changing the name of the business to LJ.[4]  During the pendency of the bankruptcy, the lease was amended to reflect Lox as the sole tenant and guarantor of the lease as of June 1, 2011.  The record evidence shows LJ used the same computers, database, furniture, fixtures, and equipment that TE had used.  LJ also used the same business forms and invoices that TE had used and, in many cases, the name of TE was crossed out on the form and the name of LJ substituted.  As in the case of TE, workers at LJ included Lox, Nimit, and Nakon.  Nakon and Nimit both testified that they "helped out" at LJ.  Further, another employee who was a jeweler worked at TE and then worked at LJ.

Lox admitted that TE left some jewelry at the Grove Plaza store when it closed down, including brass, stainless steel and silver items.  In deposition testimony, Lox claimed that the

---

[3] Lox listed Varathip as a reference in her application, stating that Varathip was her mother.

[4] According to the record, Nimit contacted Best Sign Company to create a sign for a "new company" in January 2011.  Trustee alleges that the "new company" was LJ, but in opposition to trustee's motion for summary judgment (MSJ) (described in further detail below), Nimit allegedly intended to open a company by the name of Coast Gem USA, LLC.

-4-

remaining jewelry located at the Grove Plaza store was hers and came from an entity called 99 Jewelry owned by her and her brother Bo which operated between 2001 and 2005. However, the record also indicates Varathip owned 50% of 99 Jewelry as represented in a credit application for Mercedes-Benz. Lox testified that when 99 Jewelry shut down in 2006, she stored the jewelry in a safe deposit box at Union Bank. The record reveals that Union Bank was unable to identify a safe deposit box in the name of LJ or Lox.[5]

Moreover, the record contains no evidence that LJ or Lox paid anything to debtors or TE for the business or the jewelry other than Lox's testimony that she paid TE for the computer, furniture, safe and fixtures which were at the Grove Plaza store. Although Lox testified that she never borrowed money from anyone for the purpose of opening or operating LJ, her own testimony shows that she did not have the financial wherewithal to purchase any of TE's assets. Contrary to the financial information that she gave Grove Plaza when she was added to the lease, she testified that prior to December 2010, she was not employed anywhere other than as a caretaker for her grandmother since 2000. Although she received $800-900 a month from the state or federal government to care for her grandmother, Lox testified that she received no other income.

**B.   Bankruptcy Events:  Procedural History**

On April 28, 2011, debtors filed a chapter 7 petition.

---

[5] Bo also declared that his purchase and storage of jewelry from 99 Jewelry was placed with LJ for sale, but trustee did not take his deposition.

Akers was appointed the trustee. At the time of their filing, debtors owed over $1.3 million in unsecured debt.

Debtors stated in their petition that they formerly did business as TE. Under personal property in Schedule B, they listed TE as 70% owned by them jointly and described:

> Wife owns 50%, Husband owns 20%, three children each own 10%. Consignment based jewelry business. Imports and exports jewelry from Thailand to USA. Neither Debtors nor business have ownership interest in jewelry sold. Debtors ceased operatio[n] (sic).

Debtors assigned a value of 0.00 to TE. Debtors listed creditors who held judgments against TE alone or against both TE and debtors in Schedule F.[6]

Prior to the initial meeting of creditors, a listed creditor, Saif Siddiqui of Americans/Gold/Diamonds, contacted trustee advising him that debtors were continuing to operate the jewelry store through their children to "defraud creditors" and that the "new" company existed at the same location (Grove Plaza) with the same employees. Siddiqui also stated that he spoke to other vendors with smaller debts and that they were being paid with checks issued by LJ to pay debts owed by TE.

**1. Trustee's Lockdown Of The Grove Plaza Store**

At the § 341(a) meeting of creditors on May 26, 2011, debtors testified that all of the inventory of TE was consignment jewelry of undisclosed wholesale sellers or other jewelry proprietors and, prior to the bankruptcy filing, all jewelry inventory of TE had been returned to the consigning

---

[6] We take judicial notice of debtors' petition and schedules. Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

parties. There is no documentation in the record showing that all the jewelry located at the Grove Plaza store was consigned — although some of it was — nor is there any documentation showing that the jewelry was returned to the consigning parties.

On the same day, without the benefit of a court order, trustee locked down the Grove Plaza store to protect the assets for the benefit of creditors.

### 2. The Adversary Complaint

Less than a month later, on June 20, 2011, trustee filed an adversary complaint against LJ, Lox, and the Aroonsakool children (Nimit, Nakon and Tarrah) seeking declaratory and injunctive relief and alleging claims for turnover and to avoid and recover fraudulent transfers. Trustee sought a declaration that the jewelry at the Grove Plaza store was property of debtors' estate.[7]

LJ and Lox filed answers to the complaint and a counterclaim against trustee for damages arising from trustee's seizure of the business. In November 2011, LJ and Lox filed an amended counterclaim alleging claims against trustee for violation of duties, conversion, trespass and fraud, and seeking declaratory and injunctive relief. A year later, in November

_____

[7] On September 29, 2011, trustee moved to sell the personal property at the Grove Plaza store. LJ and Lox opposed, contending that the personal property was not part of the bankruptcy estate and that an adversary proceeding was required. In November 2011, the bankruptcy court denied trustee's motion on the grounds that it could not allow a sale of property as "property of the estate" without first determining whether the debtor in fact owned the property, see Moldo v. Clark (In re Clark), 266 B.R. 163, 172 (9th Cir. BAP 2001), and noted that trustee had an adversary proceeding pending.

2012, trustee entered into an agreement with LJ, Lox, Bo and Grove Plaza, LP, which settled, among other things, the counterclaim. In exchange for Grove Plaza, LP withdrawing its bankruptcy claim, trustee's insurer paid Grove Plaza, LP $23,500 for unpaid rent and LJ $110,000 in damages.[8] In December 2012, the counterclaim was dismissed.

### a. Motion For Summary Judgment

On December 4, 2011, trustee filed a MSJ seeking judgment on all claims alleged in the complaint as a matter of law. Trustee argued that debtors and TE were alter egos because debtors did not observe any corporate formalities as shown by the undisputed evidence. He further maintained that the transfers of TE's property to LJ were avoidable as fraudulent transfers as a matter of law.

In opposition to the MSJ, Nimit submitted a declaration stating that "[n]one of the assets of Thai Export were in any way transferred to Luxury . . . [Lox] was the owner of Luxury and I saw her purchasing inventory for Luxury and I assisted in purchasing inventory for Luxury, using Luxury funds." Debtors each submitted declarations stating that at the time of their bankruptcy filing, there was no property owned by them at the

---

[8] It appears that after trustee locked down the premises, he discovered that $10,000 worth of the jewelry actually belonged to LJ. Moreover, trustee held jewelry that was on layaway or in for repairs. However, trustee continued to maintain that the total value of jewelry at the store was $150,000. LJ argues in its reply brief on appeal that trustee's settlement is evidence that trustee seized property which did not belong to the bankruptcy estate. Therefore, according to LJ, the bankruptcy court should not have ordered substantive consolidation.

-8-

Grove Plaza store. They further declared that the only jewelry left was costume brass jewelry that was on consignment from Micron, a vendor in Thailand.

In January 2013, the bankruptcy court denied the MSJ, noting that under the holdings in In re Wheeler, 444 B.R. 598, 607-10 (Bankr. D. Idaho 2011) and In re Wardle, 2006 WL 6811026 (9th Cir. BAP 2006), trustee's request to treat the assets of a non-debtor entity as the debtor's assets for purpose of bringing those assets into the bankruptcy estate, or to obtain standing to assert fraudulent conveyance theories as to transfers of the non-debtor's assets, is tantamount to a request for substantive consolidation. The court observed that trustee's complaint had not pled "reverse veil piercing" or "substantive consolidation" theories, nor had he filed a motion for substantive consolidation. However, the bankruptcy court noted that the adversary proceeding had not yet gone to trial and, given the strength of trustee's evidence that TE was operated as a sole proprietorship and that LJ was a sham, the court denied trustee's MSJ without prejudice. The court gave trustee thirty days to amend his complaint or take whatever actions he deemed necessary to place the issues properly before the court.

### b. Motion For Substantive Consolidation

On February 22, 2013, trustee filed a motion to substantively consolidate debtors' estate with non-debtors, TE and LJ, or, alternatively, for leave to file an amended

-9-

complaint.[9] In support, trustee submitted more than a hundred pages of exhibits and other evidence intended to show that debtors and TE disregarded corporate formalities and that LJ used the same premises, furniture, fixtures, and showcases previously used by TE without paying TE or debtors a dime. In addition, trustee included evidence that showed TE and LJ used the same forms for jewelry consignments and invoices and other matters, changing only the names on the forms. Finally, trustee maintained that creditors of debtors, TE and LJ dealt with the entities as a single economic unit.

On March 11, 2013, the date opposition was due, LJ filed an ex parte application for a four-day extension of time to respond to trustee's motion. It argued that: the motion was "voluminous" with more than a hundred pages of exhibits and declarations; the pleading actually contained two motions - the motion for substantive consolidation and a motion to amend; the motion was in breach of the settlement agreement between trustee and LJ on the counterclaim asserted in the complaint; and counsel for LJ was engaged in post-trial proceedings in state court which had a due date of March 8, 2013. In a supporting declaration, Jaffee declared that he had been seriously ill from March 8, 2013, to the date of the filing of the request for continuance.

Trustee filed a limited opposition. Trustee maintained that the motion for substantive consolidation did not violate

---

[9] The motion was filed in the adversary proceeding. Notice was given to creditors listed on the creditor's matrix and also to creditors of TE and LJ.

-10-

the settlement agreement and noted that the exhibits submitted in support of the motion were the same as those filed in connection with trustee's MSJ. In addition, if the bankruptcy court granted LJ's extension of time, trustee requested a three-day extension to file his reply.

On March 13, 2013, the bankruptcy court denied the application because LJ's requested extension of time, followed by a concomitant request for extension of time by trustee to reply, left the court with an unacceptably brief period of time to prepare for the motion.

Despite the bankruptcy court's denial order, LJ filed an opposition to trustee's motion on March 15, 2013. LJ's opposition contained no substantive arguments. In oral argument before this court, Jaffe maintained that he could not assert any substantive arguments because the bankruptcy court had denied his request for a continuance. Instead, LJ asserted in opposition that a continuance should have been granted and that, by not allowing the extension, it appeared the bankruptcy court was going out of its way to assist trustee.[10] LJ further argued that any amendment to the complaint would be prejudicial due to the passage of time. Finally, LJ complained that trustee had failed to include an amended complaint.

On April 9, 2013, the bankruptcy court issued a tentative

_____

[10] To the extent Jaffe implies that the court's denial of his motion for a continuance evidences bias, this argument has no merit. Adverse rulings by themselves do not constitute the requisite bias necessary to warrant recusal of a judge even if the rulings were erroneous. United States v. Nelson, 718 F.2d 315, 321 (9th Cir. 1983).

-11-

ruling granting trustee's motion for substantive consolidation. In the tentative, the court recited the Bonham factors, applied them to the facts based on the evidence before it, and found substantive consolidation was warranted. At the April 11, 2013 hearing on the matter, the bankruptcy court adopted its tentative and directed counsel for trustee to file detailed findings of fact and conclusions of law (FFCL).

On April 25, 2013, LJ filed a notice of appeal. On May 17, 2013, the bankruptcy court entered the FFCL and on May 23, 2013 entered the order granting trustee's motion. On May 31, 2013, LJ filed an amended notice of appeal.[11]

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. § 157(b)(1) and (b)(2)(A). We now address our jurisdiction over this appeal.

Orders denying a motion for a continuance are generally interlocutory. "Unlike final orders, interlocutory orders decide merely one aspect of the case without disposing of the case in its entirety on the merits." See United States v. Real Prop. Located at 475 Martin Ln., Beverly Hills, Cal., 545 F.3d 1134, 1141 (9th Cir. 2008). "A court's ruling on a motion to continue does not end the litigation." Roque v. Ynquez (In re Roque), 2014 WL 351424, at 5* (9th Cir. BAP 2014). Nonetheless, an interlocutory order such as the order denying a

_____

[11] Subsequently, trustee obtained court orders authorizing him to employ an auctioneer and sell the personal property. The jewelry and other personal property was sold at auction for $123,306.96. LJ appealed the court's ruling authorizing the sale of the personal property in BAP No. 13-1539.

-12-

motion to continue merges into the final order deciding the merits. Real Prop. Located at 475 Martin Ln., Beverly Hills, Cal., 545 F.3d at 1141 (interlocutory orders entered prior to the judgment merge into the judgment and may be challenged on appeal). Accordingly, the continuance order merged into the final order granting trustee's motion for substantive consolidation. As such, it can be challenged on appeal. See Disabled Rights Action Comm. v. Las Vegas Events, Inc., 375 F.3d 861, 872 n.7 (9th Cir. 2004) (appeal of final judgment draws into question all earlier, non-final orders and rulings which produced the judgment).

With respect to the substantive consolidation order, the Clerk's Office issued an Order re Finality, requiring LJ to file a response regarding the finality of the order. After LJ responded, although the order appears final, the Panel granted LJ leave to appeal to the extent it was necessary. Therefore, we are satisfied that we have jurisdiction to decide this appeal under 28 U.S.C. § 158.

## III. ISSUES

A.   Whether the bankruptcy court abused its discretion by denying LJ's ex parte application for an extension of time to file its opposition; and

B.   Whether the bankruptcy court erred by granting trustee's motion to substantively consolidate the estate of debtors with the non-debtor entities TE and LJ nunc pro tunc.

## IV. STANDARDS OF REVIEW

The bankruptcy court's denial of an extension of time is reviewed for abuse of discretion. Orr v. Bank of Am., 285 F.3d

-13-

764, 783 (9th Cir. 2002). The court abuses its discretion if it applied the wrong legal standard or its findings were illogical, implausible or without support in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

Application of the factors for substantive consolidation in Bonham to the underlying facts presents a mixed question of law and fact, where factual determinations are reviewed under the clearly erroneous standard, and determinations of law are reviewed de novo. See Meyer v. Lepe (In re Lepe), 470 B.R. 851, 855 (9th Cir. BAP 2012) (citing Andrews v. Loheit (In re Andrews), 155 B.R. 769, 770 (9th Cir. BAP 1993)); see also Murray v. Bammer (In re Bammer), 131 F.3d 788, 792 (9th Cir. 1997).

We review for abuse of discretion a bankruptcy court's entry of a nunc pro tunc approval of a motion. In re Bonham, 229 F.3d at 764.

## V. DISCUSSION

**A. The Bankruptcy Court Did Not Err In Denying LJ's Request For An Extension Of Time**

LJ's main argument on appeal is that the bankruptcy court's error in denying its request for an extension of time to file opposition to trustee's motion warrants reversal of the consolidation order. According to LJ, the bankruptcy court should have granted its request under the holding in Ahanchian v. Xenon Pictures, 624 F.3d 1253 (9th Cir. 2010) which discusses the standards for extension requests under Civil Rule 6(b)(1). There, the Ninth Circuit held that requests for extensions of

-14-

time made before the applicable deadline has passed should normally be granted in the absence of bad faith or prejudice to the adverse party. LJ asserts that there is no evidence it acted in bad faith nor would there have been prejudice to trustee had the continuance been granted.

We have previously noted that the standards in Ahanchian are not applicable to requests for an extension of time:

> A careful reading of the Bankruptcy Rules shows that Civil Rule 6(b)(1) does not apply in adversary proceedings. Unlike many other Civil Rules, the Rules do not incorporate Civil Rule 6. Instead, portions of Civil Rule 6 are adopted via Rule 9006, which governs, generally, "enlargement" of time periods. And while some of the language of Civil Rule 6(b)(1) is similar to that in Rule 9006(b), the provisions of Civil Rule 6(b)(1) establishing the "good cause" standard for granting extensions of time are not adopted in the Rules.

N. Cal. Small Bus. Fin. Dev. Corp. v. Arnold Bellow (In re Bellow), 2011 WL 4502916, at *5 (9th Cir. BAP 2011), aff'd, In re Bellow, 544 Fed.Appx. 732 (9th Cir. 2013). Because Rule 9006(b) controls all motions for extensions of time in the bankruptcy courts (whether made in an adversary proceeding or not), Civil Rule 6(b)(1) standards for extensions of time do not apply. Therefore, LJ's reliance on Ahanachian is misplaced.

Rule 9006(b)(1) states that a bankruptcy court may at any time in its discretion enlarge the time period in which an act is required or allowed to be done. A bankruptcy court has substantial discretion to control its own calendar. Danjaq LLC v. Sony Corp., 263 F.3d 942, 960-61 (9th Cir. 2001). Four factors are relevant to our inquiry into whether the court abused its discretion in denying a continuance: (1) whether the requesting party has been diligent; (2) whether there is a

genuine need for the continuance; (3) whether the continuance will inconvenience the Court and the opposing party including its witnesses; (4) whether the requesting party will suffer prejudice if the request is denied.  Absent a showing of prejudice suffered by LJ, we will not disturb the bankruptcy court's ruling.  Danjaq, 263 F.3d at 961; see also Berry v. U.S. Trustee (In re Sustaita), 438 B.R. 198, 210-11 (9th Cir. BAP 2010), aff'd, 460 Fed. Appx. 627 (9th Cir. 2011).

LJ points to no prejudice arising from the denial of its request for an extension of time other than a generalized assertion that had the bankruptcy court allowed the short extension of time, it would have been able to present the court with the facts and arguments against ordering the substantive consolidation of LJ with debtors.  This vague allegation is not adequate to satisfy the prejudice requirement.  See United States v. LaRouche, 896 F.2d 815, 825 (4th Cir. 1990) (observing that "[m]ore than a general allegation of 'we were not prepared' is necessary to demonstrate prejudice").  Indeed, on appeal LJ identifies no arguments it would have made had it more time to prepare nor does it rebut trustee's evidence with its own offer of proof.

At oral argument, the Panel questioned counsel for LJ about how its arguments or evidence would differ from that presented in opposition to trustee's MSJ.  Counsel maintained that the evidence in opposition to substantive consolidation would be "significantly different" from evidence submitted in opposition to the MSJ.  This argument is not persuasive.  Trustee's MSJ raised the issue of whether debtors and TE were alter egos.

-16-

Alter ego doctrine and substantive consolidation overlap when the second factor under Bonham is at issue. "Entanglement can be shown where there is a unity of interest and common ownership between the debtor and the target entities, the target entities were 'but instrumentalities of the bankrupt with no separate existence,' there was commingling of assets and no clear demarcation between the affairs of the debtor and the target entities, and adhering to the separate corporate entities theory would result in an injustice to the bankrupt's creditors." Sharp v. Salyer (In re SK Foods, Ltd.), 499 B.R. 809, 833-34 (Bankr. E.D. Cal. 2013) (citing In re Bonham, 229 F.3d at 767). Thus, the presence of traditional "alter ego" factors may provide a basis to find that the affairs of the debtor are so entangled such that consolidation will benefit all creditors. In re SK Foods, 499 B.R. at 833 (citing Meruelo Maddux Props.-760 S. Hill Street, LLC v. Bank of Am., N.A. (In re Meruelo Maddux Props., Inc.), 667 F.3d 1072, 1075 n.1 (9th Cir. 2012) ("Appellate courts have ratified substantive consolidation orders when, for example, the debtors have abused corporate formalities, or creditors have treated the separate entities as a single unit and the business affairs of the consolidated entities were hopelessly entangled.").

In addition, two of the other three factors in Danjaq weigh against LJ. The record shows that the requested extension would not have served any legitimate need of LJ. In opposing trustee's MSJ, LJ submitted the testimony of Lox to support its ownership claim to the jewelry. However, in concluding that substantive consolidation was warranted, the bankruptcy court

-17-

relied on trustee's evidence which impeached Lox's credibility as a witness. There is no indication in the record or in LJ's brief on appeal that an extension of time would have assisted LJ in refuting the trustee's evidence to support its ownership claim. Further, the bankruptcy court specifically found that an extension of time would be inconvenient for the court as it would not have adequate time to prepare. Under these circumstances, LJ was not prejudiced and we will not disturb the court's ruling denying its request for an extension of time.

**B.     The Bankruptcy Court Did Not Err When It Granted the Substantive Consolidation Motion Nunc Pro Tunc**

Substantive consolidation is an uncodified, equitable doctrine allowing the bankruptcy court, for purposes of the bankruptcy, to "combine the assets and liabilities of separate and distinct—but related—legal entities into a single pool and treat them as though they belong to a single entity." In re Bonham, 229 F.3d at 764. The doctrine "enables a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation." Id. The essential purpose behind the doctrine is one of fairness to all creditors, but it is a doctrine to be used sparingly. Id. at 764, 768.

In Bonham, the Ninth Circuit adopted a disjunctive two-factor test for determining whether application of the substantive consolidation doctrine is warranted. In applying the test, courts consider whether creditors dealt with the entities as a single economic unit and did not rely on their

-18-

separate identity in extending credit or whether the affairs of the debtor are so entangled that consolidation will benefit all creditors. 229 F.3d at 766. "In either case, the bankruptcy court must in essence determine that the assets of all of the consolidated parties are substantially the same." Bonham, 229 F.3d at 771. Ultimately, the decision to apply the substantive consolidation doctrine stems from a weighing of the equities and must be tailored to meet the needs of each particular case. Id.

Trustee, as the moving party, has the initial burden of showing either one of the Bonham factors are met. Reider v. Fed. Deposit Ins. Corp. (In re Reider ), 31 F.3d 1102, 1107 (11th Cir. 1994). Once trustee establishes a close interrelationship between debtors and the non-debtor entities, there is a presumption that creditors did not rely on their separate credit. The burden of proof then shifts to the parties opposing substantive consolidation to show otherwise. Bonham, 229 F.3d at 767.

We begin by reviewing the evidence regarding the interrelationship between debtors and TE. At the outset, we observe that there is some question whether TE had a signed and dated operating agreement; there was no agreement in the record.[12] Moreover, there is no evidence in the record that TE

---

[12] Cal. Corp. Code § 17701.10 entitled "Operating agreement; scope; limitations, variations, and modifications; fiduciary duty; indemnification and damages" provides:

(a) Except as otherwise provided in this section, the
continue...

-19-

ever held formal meetings, took minutes or conducted an election of officers.  The record also establishes that TE was never capitalized by debtors or debtors' children, who were also listed as members of TE.  Further, although family members testified[13] that they "helped out" at TE, the evidence shows that they were not paid as employees.  Even debtors did not receive any wages, or guaranteed payments from TE, per their 1040 tax returns.  These facts, which are not contested, show that debtors operated TE as a sole proprietorship and, with no source of any other income, took money from the business as needed, treating the assets as their own.

The line of corporate separateness between TE and LJ is more blurry.  As noted by the bankruptcy court, LJ was formed when debtors/TE were facing litigation and post-judgment collection activities from creditors.  Moreover, as the record indicates, LJ was in reality simply a continuation of TE's

---

[12]...continue
operating agreement governs all of the following:

(1) Relations among the members as members and between the members and the limited liability company.

(2) The rights and duties under this title of a person in the capacity of manager.

(3) The activities of the limited liability company and the conduct of those activities.

(4) The means and conditions for amending the operating agreement.

[13] Trustee deposed some of the family members and included portions of these depositions as evidence in support of the consolidation motion.

business. Family members who worked for TE also worked for LJ. LJ occupied the same space as TE, engaged in the same business and used the same equipment and business forms as TE, sometimes just striking out the name of TE. Payment for debtors' bankruptcy attorneys and other personal payments came from LJ accounts. Further, Lox admitted that some of the jewelry left at the Grove Plaza store belonged to debtors/TE. After months of discovery, however, the record shows that LJ still did not accurately identify and segregate the jewelry that belonged to debtors/TE from that of LJ.

The commingling of assets, the difficulty in segregating and ascertaining debtors' assets and liabilities from those of TE and LJ, and the transfer of TE's assets to LJ without any corporate formality demonstrate the type of close interrelationship between debtors and the non-debtor entities which warrants substantive consolidation. Accordingly, the bankruptcy court's decision to apply the substantive consolidation doctrine nunc pro tunc was appropriate.

In the end, the bankruptcy court also considered evidence submitted by LJ in opposition to trustee's MSJ which allegedly showed that LJ owned the jewelry found at the Grove Plaza store. In this regard, Lox testified in opposition to trustee's MSJ that the jewelry came from 99 Jewelry, a business that she owned with her brother. Trustee's evidence shows however that debtor, Varathip Arronsakool, held herself out as a 50% owner of 99 Jewelry. Further, trustee's expert, Alan Myers, testified that there were no bank statements, cancelled checks, income tax returns or sales tax returns that support or document that Lox

or 99 Jewelry paid for any of the items. In addition, there were no sales records for 99 Jewelry nor was there proof that Lox had stored the items in a safe deposit box in the National City Branch of Union Bank or anywhere else despite the fact that she testified to the same. Finally, as already noted, Lox's own testimony was that she was unemployed and thus did not have the financial means to purchase any of the jewelry.[14]

To the extent the bankruptcy court was required to make credibility determinations or make inferences from these facts, its determination that LJ did not own the jewelry found at the Grove Plaza store is reviewed under the clearly erroneous standard. We cannot conclude that the bankruptcy court's findings were clearly erroneous when they are based on a plausible view of the evidence as a whole. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 574 (1985). These factual findings, unchallenged by LJ on appeal, lend additional support to the bankruptcy court's legal conclusion that application of the substantive consolidation doctrine nunc pro tunc[15] was warranted because the assets of debtors, TE and LJ are

---

[14] There is also no written agreement with debtors/TE that shows Lox paid anything to purchase TE. At the continued 341(a) meeting of creditors held on June 29, 2011, debtors testified that they had no written agreement with Lox to sell her jewelry.

[15] LJ makes no argument on appeal that the nunc pro tunc aspect of the bankruptcy court's decision was an abuse of discretion. "[O]n appeal, arguments not raised by a party in its opening brief are deemed waived." Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999).

substantially the same.

## VI.   CONCLUSION

For the reasons stated, we AFFIRM.